Jerry L. CANTRELL, Plaintiff–Appellee,

v.

KNOXVILLE COMMUNITY DEVELOPMENT CORPORATION, Defendant–Appellant.

Nos. 94–5033, 94–5379.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1995.

Decided July 19, 1995.

---

Douglas J. Toppenberg (briefed), Judith Elaine Burke (argued), Toppenberg & Burke, Knoxville, TN, for plaintiff-appellee.

William S. Lockett, Jr. (argued), Natasha K. Metcalf, Rebecca B. Murray (briefed), Kennerly, Montgomery & Finley, Knoxville, TN, for defendant-appellant.

Before: JONES and SILER, Circuit Judges; WISEMAN, District Judge.**

SILER, J., delivered the opinion of the court, in which WISEMAN, D.J., joined. JONES, J. (pp. 1181–82), delivered a separate opinion dissenting in part.

SILER, Circuit Judge.

This is an employment race discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Defendant, Knoxville Community Development Corporation ("KCDC"), appeals the district court's judgment for plaintiff, Jerry L. Cantrell. The key issues raised include the sufficiency of the evidence for the plaintiff, the calculation of back wages as damages, and the tolling of the statute of limitations when Cantrell failed to file his Equal Employment Opportunity Commission ("EEOC") charge in a timely manner. We affirm in part and reverse in part. KCDC's challenge of the calculation of back wages at a rate higher than Cantrell was receiving prior to the layoff and the question of equitable tolling under the circumstances of this case have not yet been addressed in this circuit. We, therefore, discuss these issues below. All other issues raised by the appeal are addressed in an unpublished appendix to this opinion.

** The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of

I.

Cantrell filed this action on January 14, 1991, claiming that he was selected for a reduction in force because he was black. Because the complaint alleged discrimination on March 19, 1990, KCDC filed a motion to dismiss for failure to file the underlying EEOC claim within the 180–day filing period required by T.C.A. § 4–21–302(c) and 42 U.S.C. § 2000e–5(e). The district court denied the motion, holding that the filing requirement was equitably tolled due to Cantrell's attorney's mental instability. After a bench trial, the court found that Cantrell had been discharged from his job because he was black and awarded $61,863.32 in lost wages and back wages, plus attorney's fees and costs. In awarding back wages, the court calculated the amount of the award based on the wages it felt Cantrell should have been receiving in the absence of discriminatory practices, rather than the wages Cantrell had received prior to the layoff.

II.

A remand is necessary to allow the district court to revisit the question of whether equitable tolling properly applies to allow Cantrell's claim to be filed with the EEOC after the 180–day filing deadline. There is no dispute that the administrative time limits for filing EEOC complaints are subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Moreover, time limitations may be tolled on equitable grounds not inconsistent with the legislative purpose. *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir.1979).

KCDC's first objection to the district court's tolling of the time limitation applicable to Cantrell's claim is that, in the cases the court cites for support of its action, the basis for tolling the filing deadline "sprung from the administrative functioning of the statutory scheme itself, and not from alleged attorney error." KCDC argues that attorney negligence is never sufficient to warrant equitable tolling. That may be, but this is not

Tennessee, sitting by designation.

a case of "garden variety" attorney negligence. If Cantrell pursued his claim diligently, yet was abandoned by his attorney due to his attorney's mental illness, equitable tolling may be appropriate. *See Burton v. United States Postal Service,* 612 F.Supp. 1057, 1059 (N.D.Ohio 1985) (equitable tolling based on attorney's abandonment of client who pursued his claim as diligently as possible); *cf. Moody v. Bayliner Marine Corp.,* 664 F.Supp. 232, 236 (E.D.N.C.1987) (mental incapacity of plaintiff may warrant equitable tolling of statute of limitations requirements in Title VII action).

In this case, however, a factual determination was not properly made concerning the attorney's mental incapacity. The district court judicially noticed counsel's mental instability.[1] Judicial notice, however, is limited to facts:

> not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed.R.Evid. 201(b).

The mental instability of an individual is not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, as reasonable professionals can disagree as to an individual's mental state. Moreover, even if counsel's mental instability at the time of decision was unquestioned and widely known within the district court's jurisdiction, the question remains whether counsel suffered from mental instability during the 180–day filing period. It was inappropriate, therefore, for the district court to take judicial notice of the attorney's mental incapacity during the relevant 180–day period.

■ This cause will be remanded to allow Cantrell an opportunity to present evidence of his attorney's mental state within the 180–day filing period. Also, as lack of diligence by a claimant acts to defeat his claim for equitable tolling, Cantrell should be required to present evidence of his diligence in pursuing the claim. *See Morgan v. Washington Manufacturing Co.,* 660 F.2d 710, 712 (6th Cir.1981) (equitable considerations should toll the 180–day period, in the absence of prejudice to the defendant or a showing of bad faith or lack of diligence by a claimant).

### III.

■ We decline to disturb a lower court's award of damages on appeal as long as that award is "supported by some competent, credible evidence going to all the essential elements of [the] award." *Adkins v. GAF Corp.,* 923 F.2d 1225, 1232 (6th Cir. 1991). KCDC argues that, because of Cantrell's shoulder injury, he failed to show that he could have continued his employment had he not been discharged. The district court's finding that Cantrell, despite his shoulder injury, could have—and did—continue to perform some plastering work is supported by the record. Cantrell's decision not to pursue a plastering career after his layoff does not prove that he would have been unable to continue such work.

■ KCDC also argues that Cantrell failed to mitigate his damages, because he sought a different type of employment that consistently paid less than plastering work. This argument is without merit. KCDC cites *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1234 (7th Cir.1986), for the proposition that the duty to mitigate and to prove mitigation is on Cantrell. However, *Wheeler* makes clear that, once damages have been established, it is the *employer's* burden to show that the employee failed to mitigate. *Id.* KCDC did not show that Cantrell was not reasonably diligent in seeking other employment, or that he could have found comparable employment. *See id.* Moreover, although the district court did not explicitly hold that Cantrell had mitigated, it deducted from the lost wages amount the earnings Cantrell received from subsequent jobs.[2]

---

1. Cantrell's counsel was removed from the active practice of law due to his mental state. His license was transferred to disability inactive status.

2. The district court properly offset temporary total disability benefits received by Cantrell against the back-pay award, and refused to offset unemployment benefits received.

The only problem with the district court's calculation of the damage award is that the court did not award back pay at the rate Cantrell was receiving. Instead, it awarded back pay at the rate it felt Cantrell should have received had the employer not engaged in discrimination prior to the discharge. The approach taken by the district court effectively affords Cantrell relief for a disparate pay claim that he failed to pursue.

The cases cited by Cantrell in support of addressing unequal pay in a back-pay award for discriminatory discharge deal primarily with what constitutes a "continuing violation" under Title VII for statute of limitations purposes. Even the case Cantrell cites as an example of a district court awarding "back-pay for non-actionable prior discriminatory acts by paying her the difference in [plaintiff's] actual salary at the time of her constructive discharge and the ... salary she should have received if the defendant had not discriminated against her ... five years earlier," deals with the continuing violation question, not the question of whether non-actionable discriminatory acts can be addressed indirectly through calculation of damages. *See Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554, 1560 (5th Cir.1985).

Whether a back-pay award properly includes the value of enhanced income Cantrell should have received has been addressed only in the context of a continuing violation situation. *See, e.g., Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 980 (5th Cir. 1983); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 472 (D.C.Cir.1976). There is no authority in support of or in opposition to basing a damages award for a discrete act of discriminatory discharge on non-actionable prior acts of discrimination. The district court should not have provided indirect relief for the disparate pay claim. We remand, therefore, to allow the district court to recalculate the damages award based on Cantrell's actual wages at the time of discharge.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part. This cause is **REMANDED** for recalculation of damages consistent with this opinion and for factual findings regarding Cantrell's counsel's mental state, as well as Cantrell's own diligence in pursuing his EEOC claim, during the 180–day period commencing March 19, 1990. Of course, if the court finds the filing period was not tolled, it need not recalculate the damages, as they would not be recoverable.

NATHANIEL R. JONES, Circuit Judge, dissenting in part.

I disagree with the majority on the equitable tolling issue. The district court did not err in finding that equitable tolling was appropriate in this case, and thus, I do not find it necessary to remand this issue to the district court.

This court reviews a district court's application of the doctrine of equitable tolling *de novo. Rose v. Dole,* 945 F.2d 1331, 1334 (6th Cir.1991). The majority has decided to remand the issue of equitable tolling to the district court so that it may make a factual finding with respect to the mental state of Cantrell's attorney. Maj. Op. at 1180. The majority finds that this is necessary because the district court inappropriately took judicial notice of the mental state of Cantrell's attorney. *Id.* I respectfully disagree.

KCDC argued in its motion to dismiss that Cantrell's failure to file his EEOC claim within 180 days of his discharge barred his claim. In denying this motion the district court stated the following:

In the instant case, Mr. Cantrell sought advice of counsel in the month of his discharge. He claims his attorney, W.P. Boone Dougherty, completed a claim on his behalf and led him to believe it had been filed. He claims he repeatedly called Mr. Dougherty's office and was told that he had not yet heard from the EEOC. In fact, Mr. Dougherty had neglected to file the claim.

The Court is well aware of Mr. Dougherty's psychiatric problems and his inability to file documents in a timely fashion. It FINDS, under these unusual circumstances, that Mr. Cantrell acted diligently to protect his rights and that he had no reason to know that his administrative action had not been timely filed. The Court

suspects the EEOC made a similar finding, although there is no record of this, when it processed Mr. Cantrell's claim as if it had been filed within the time limits. J.A. at 275–76.

Without even determining whether or not it was appropriate for the court to take "judicial notice" of the psychiatric problems of Cantrell's attorney, it is my view that, if the statement, "The Court is well aware of Mr. Dougherty's psychiatric problems and his inability to file documents in a timely fashion," were excised, the record would still reflect an appropriate basis for applying equitable tolling. The record does not reveal that Cantrell's late filing prejudiced KCDC or that Cantrell exercised bad faith or lacked diligence. *See Morgan v. Washington Mfg. Co.,* 660 F.2d 710, 712 (6th Cir.1981) (holding that equitable tolling is appropriate "in the absence of prejudice to the defendant or a showing of bad faith or lack of diligence by a claimant")[1]; *see also Andrews v. Orr,* 851 F.2d 146, 152 (6th Cir.1988) (holding that where defendant was not prejudiced due to late filing and plaintiffs "acted promptly after becoming aware of the true state of affairs" equitable tolling of filing requirement was appropriate). Instead, the record supports the district court's conclusion that Cantrell acted diligently to protect his rights.

Furthermore, the district court appropriately took "judicial notice" of Dougherty's psychiatric problems. In his response to KCDC's motion to dismiss, Cantrell presented evidence of Dougherty's letter of July 10, 1991, to Cantrell stating his intention to retire from law practice, and stating that "[a]s you may know, I have been hospitalized recently for treatment for major depression." J.A. at 250. Additionally, Cantrell also presented two news articles that discussed Dougherty's battles with mental depression and stress throughout his legal career. J.A. at 245, 246. Clearly, the district court appropriately took judicial notice of a fact "generally known within the territorial jurisdiction of the trial court." Fed.R.Evid. 201(b).

Finally, in taking judicial notice of Dougherty's mental difficulties, the court simply recognized that this was another factor bearing on its determination that equitable tolling was appropriate in this case. The district court neither stated that this mental incapacity actually caused Dougherty's failure to file Cantrell's EEOC complaint, nor was it required to make such a finding before it was allowed to either take judicial notice of Dougherty's general psychiatric problems or apply the doctrine of equitable tolling. The district court appropriately applied equitable tolling in this case.

For the reasons stated, I dissent from the portion of the majority opinion remanding this case to the district court for further consideration of the equitable tolling issue. I concur in the remainder of the opinion.

---

1. The majority appears to find that this case supports the proposition that the claimant is required to present evidence of his diligence before equitable tolling can be applied. *See* Maj. Op. at 1180. I do not read *Morgan* as creating any such burden. Furthermore, Cantrell did present evidence of his diligence. In his sworn affidavit, which was included in his response to KCDC's motion to dismiss, he stated the following:

> The week following my dismissal from KCDC I went to see Atty. Boone Dougherty in Knoxville, Tennessee.... During my initial visit at Mr. Dougherty's office a paralegal interviewed me extensively, and later in my discussion with Mr. Dougherty he told me he would file a complaint with the EEOC on my behalf for this incident. Over the course of the summer I called Mr. Dougherty several times and asked him what the EEOC had said, and he told me he had not heard anything yet. It was not until much later, after I had obtained other counsel, that I realized that Mr. Dougherty had not filed the complaint in a timely manner.

J.A. at 247–48. Cantrell further presented evidence of some notes of Dougherty's secretary to her boss, including one dated August 13, 1990 that stated that "Jerry called about these papers—he has called many times." J.A. at 251. KCDC, on the other hand, has not indicated that they were prejudiced by the late filing, or that the late filing was made in bad faith or due to a lack of diligence on Cantrell's part.