**<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>**

File Name: 18a0250n.06

Case No. 17-5050

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CARLOS LEVY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| DAVID R. OSBORNE, Warden, | ) | TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, ROGERS, and LARSEN, Circuit Judges.

**SILER**, Circuit Judge. Carlos Levy, a Tennessee prisoner proceeding with counsel, challenges an order of the district court that dismissed as untimely his 28 U.S.C. § 2254 habeas petition. On appeal, Levy argues that the habeas deadline in his case should be equitably tolled because a language barrier prevented him from timely filing his petition and because he diligently pursued his rights. Because the district court did not abuse its discretion by finding that Levy failed to diligently pursue his rights, we **AFFIRM**.

I.

The facts of this case are more fully set forth in our order granting Levy a certificate of appealability. *See Levy v. Osborne*, No. 17-5050 (6th Cir. Aug. 29, 2017). In short, Levy pled

guilty to numerous offenses in Tennessee state court. He was sentenced to thirty years of imprisonment, and his direct appeal was unsuccessful.

In January 2010, Levy filed a pro se federal habeas petition, which he later amended. The next year, he filed a counseled habeas petition. In 2013, the magistrate judge recommended that Levy's petition be dismissed as untimely. The district court rejected that recommendation and sent the case back to the magistrate judge for an evidentiary hearing on whether Levy's asserted lack of ability to communicate in English and his lack of access to Spanish-language legal materials or assistance entitled him to equitable tolling.

The magistrate judge held an evidentiary hearing and again recommended to the district court that Levy's petition be dismissed as untimely. This time, over Levy's objections, the district court accepted the magistrate judge's recommendation and declined to issue a certificate of appealability.

We issued a certificate of appealability as to (1) whether Levy established an extraordinary circumstance that prevented timely filing of his habeas petition and (2) whether, and to what extent, a non-English-speaking petitioner's ignorance of the law factors into the diligence requirement of an equitable-tolling claim based on that petitioner's lack of English proficiency.

## II.

"[W]here the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation omitted).

Levy submits our review should be *de novo* because the facts are undisputed. Conversely, the warden argues for abuse-of-discretion review, asserting that "there is a prominent dispute of fact about the extent to which petitioner's English proficiency played any role in his untimely filing." The warden also points out that equitable tolling does not involve the application of bright-line rules.

The warden has the better argument. Indeed, there is a significant factual dispute in this case concerning the extent of Levy's English proficiency. Accordingly, we will review for abuse of discretion. *See id.* ("The district court appeared to exercise its discretion in determining that Robertson did not meet his burden of proving he was entitled to equitable tolling."). A district court abuses its discretion by relying on clearly erroneous findings of fact, improperly applying the law, or using an incorrect legal standard. *Id.*

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations for 28 U.S.C. § 2254 petitions. *See* 28 U.S.C. § 2244(d). As we explained in our prior order, Levy has not identified a newly recognized constitutional right or any newly discovered facts. *Levy*, No. 17-5050, Order at 6. He also has not argued that the state created an impediment to his timely filing of a petition. *Id.* Thus, the limitations period for Levy's petition began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* (quoting 28 U.S.C. § 2244(d)(1)(A)).

Levy's conviction became final in November 2007, so the limitations period ran in November 2008. Because he did not file his petition until January 2010, there is no dispute that his filing was untimely. The question before the court, then, is whether Levy is entitled to

equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 634 (2010) (holding that the federal habeas corpus statute is subject to equitable tolling).

A petitioner seeking equitable tolling must demonstrate (1) that some extraordinary circumstance stood in his way and prevented timely filing and (2) that he has been pursuing his rights diligently. *Id.* at 649. Levy primarily seeks equitable tolling for the relevant period that he was at Northwest Correctional Complex, which was from November 2007 to August 2009.

Levy contends that an inability to communicate in English is similar to a physical or mental impediment and that it qualifies as an extraordinary circumstance that can prevent a timely filing of a habeas petition. We have found that a lack of English proficiency, standing alone, is insufficient to entitle a petitioner to equitable tolling. *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). However, Levy urges us to follow the lead of the Second, Third, and Ninth Circuits and find that the inability to read and understand English, coupled with the denial of access to translation or legal assistance, can constitute an extraordinary circumstance in the equitable-tolling context. *See Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011); *Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008); *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006).

We need not decide whether Levy faced an extraordinary circumstance, though, because the district court did not abuse its discretion by finding that he failed to act with due diligence. On the diligence prong, Levy must show that "he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." *Mendoza*, 449 F.3d at 1070.

A review of cases addressing the diligence requirement from our sister circuits places Levy's actions into perspective. For example, the Second Circuit has held that petitioners who "claimed nothing more than the unavailability of personnel within their prisons who could

translate for them during the applicable limitations periods" failed to act with due diligence. *Diaz*, 515 F.3d at 154. In *Diaz*, the court found particularly relevant that there was "no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement." *Id.*

At the other end of the spectrum, the Third Circuit has held that a petitioner who "attempted to pursue his claims repeatedly" did satisfy the diligence requirement. *Pabon*, 654 F.3d at 403. Indeed, that court noted that it "count[ed] ten or more efforts where [the petitioner] sought assistance, both before and after the AEDPA deadline." *Id.* at 402.

Levy's efforts fall somewhere between those of the petitioners in *Diaz* and the petitioner in *Pabon*. In such a posture, the district court was faced with two competing narratives. On the one hand, Levy and his fellow inmates testified that Northwest did not have any Spanish legal materials or Spanish-speaking inmate advisors. Further, the record demonstrates that Levy used the help of bilingual inmates when he had access to them. For instance, Levy filed an application for permission to appeal to the Tennessee Supreme Court with the help of a bilingual cellmate. Additionally, when Levy received a letter from a court, he asked for translation assistance, but none was provided. Yet, on the other hand, Levy's plea counsel testified that she had no trouble communicating with him when advising him before he entered his plea, and Levy never renewed his request for translation help, asked for Spanish legal materials, or sought an interpreter. Neither did Levy ask bilingual inmates to speak with prison staff on these topics— even though Levy *did* ask bilingual inmates to speak with prison staff on his behalf about day-to-day matters.

Levy challenges the district court's finding that he had not acted with due diligence in several respects. For instance, Levy urges the court that he should not be required to return to a "dry well" and to seek assistance when none had been provided when previously requested. He further contends that, when an inmate relies on a third party to handle his habeas litigation, he is held responsible for whatever mistakes the third party makes, and this is an unfair demand.

We are reviewing for abuse of discretion, and the district court's conclusion was reasonable in light of the record it had before it, which reveals only minimal efforts by Levy to pursue his rights. After bilingual fellow-inmate Jones was transferred, Levy asked for translation assistance at Northwest only one time. Also, none of Levy's asserted acts of diligence pertained to federal habeas relief in particular. The thrust of Levy's argument is that the language barrier left him unable to even learn about the existence of that remedy, but Levy could have asked Jones, who had assisted him with other legal matters, about the existence of collateral remedies. The district court therefore did not abuse its discretion by finding that Levy failed to establish due diligence and denying him the extraordinary remedy of equitable tolling.

**AFFIRMED**.